

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

Affirmed by *in part* *City of Cocoa* *Christian Herschled*
*536 SW2d 653 NRE*

June 28, 1974

The Honorable Cue D. Boykin, Chairman
Texas Industrial Accident Board
P. O. Box 12757, Capitol Station
Austin, Texas 78711

Opinion No. H- 338

The Honorable A. J. Hartel
County Attorney
Liberty County
P. O. Box 431
Liberty, Texas

The Honorable Ben F. McDonald, Jr.
Executive Director
Texas Dept. of Community Affairs
P. O. Box 13166, Capitol Station
Austin, Texas 78711

Re: Various questions
concerning Article 8309h,
Vernon's Texas Civil
Statutes.

The Honorable Don B. Odum
Commissioner of Insurance
State Board of Insurance
1110 San Jacinto
Austin, Texas 78786

The Honorable Bevington Reed
Coordinating Board
Texas College and University System
P. O. Box 12788, Capitol Station
Austin, Texas 78711

Gentlemen:

The 63rd Legislature, in the adoption of Senate Bill 283 (Acts 1973,

p. 1559

63rd Leg., ch. 88, p. 187) made extensive changes in our workmen's compensation laws, including the addition of Articles 8309g and 8309h, V. T. C. S. Each of you has asked us one or more questions involving Article 8309h.

Article 8309g, though not directly involved in your questions, is important to the construction of Article 8309h. Article 8309g extends workmen's compensation coverage to all state employees injured in the course of employment, defining "employee" to be a person in the service of the state "whose compensation is paid by warrant issued by the Comptroller" with the exception of employees of the Highway Department or persons employed "by an institution of higher education subject to a separate workman's compensation law". Article 8309g, Sec. 1(1). Included in this category are employees of Texas A & M University (Article 8309b, V. T. C. S.); and employees of the University of Texas System (Article 8309d, V. T. C. S.); and employees of Texas Tech University (Article 8309f, V. T. C. S.).

Article 8309h, on the other hand, extends workmen's compensation benefits to employees of political subdivisions defined to mean a county, a home-rule city, a city, a town, a village, a special district, a school district, a junior college district, or "any other legally constituted political subdivision of the state."

The first question, from South Plains College, via Dr. Reed, asks whether Article 8309h is constitutional. South Plains College is covered by Article 8309h, because it is a junior college district. Section 61.003, Vernon's Texas Education Code.

Article 8309h, if authorized at all by the Texas Constitution, is authorized by Sec. 60 of Article 3 of the Texas Constitution, which provides:

> Sec. 60. The Legislature shall have the power to pass such laws as may be necessary to enable all counties and other political subdivisions of this State to provide Workman's Compensation Insurance, including the right

to provide its own insurance risk, for all employees
of the county or political subdivision as in its judgment
is necessary or required; and the Legislature shall
provide suitable laws for the administration of such
insurance in the counties or political subdivisions of
this State and for the payment of the costs, charges
and premiums on such policies of insurance and the
benefits to be paid thereunder. [emphasis added]

It is argued that this provision authorizes permissive legislation
only, and we are cited to Articles 8309c, 8309e and 8309e-2 as examples
of such legislation under this Section and Section 61 of Article 3. The
argument continues that, since Article 8309h uses "shall" instead of
"may", it is mandatory and not permissive, exceeds the Legislature's
constitutional authority and is void.

The courts, in construing the Article, will be charged with adopting
the construction that will render the statute valid. Newsom v. State, 372
S. W. 2d 681 (Tex. Crim. 1963); State v. Shoppers World, Inc., 380 S. W. 2d
107 (Tex. 1964). In light of the entire legislative scheme, we interpret
Sec. 2 (a) of Article 8309h as constitutional, and so advise Dr. Reed.

Mr. McDonald, on behalf of the Texas Department of Community
Affairs, has asked whether public housing authorities are "political sub-
divisions" within Article 8309h.

Section 2 (a) of the statute, quoted in part above, makes its provisions
apply to "[a]ll political subdivisions of this state . . . . " "Political Sudivi-
sion" is defined in Sec. 1 (1) to mean "a county, a home-rule city, a city, town,
or village organized under the general laws of this state, a special district,
a school district, a junior college district, or any other legally constituted
political subdivision of the state. "

The Housing Authorities Law is found in Article 1269k, V. T. C. S. It
provides for the operation of such authorities by cities (Sec. 4), by counties
(Sec 23a), and by regions consisting of two or more counties (Sec. 23b). In

each instance, the entity created is to be a public body corporate and politic. See Attorney General Opinion H-114 (1973).

We are unaware of any Texas decision holding that housing authorities are political subdivisions of the state. In Bolen v. Board of Firemen, etc., 308 S. W. 2d 904 (Tex. Civ. App., San Antonio, 1957, err. ref'd.) one question was whether a board charged with responsibility for administering a pension fund was subject to the limitations of Sec. 52 of Article 3 of the Texas Constitution which is applicable to political subdivisions of the State. The court held it was not and, in so holding, defined the attributes of a political subdivision as contemplating: (1) geographical area and boundaries; (2) public elections; (3) public officials; (4) taxing power and (5) a general public purpose or benefit. These tests or ones similar to them have been adopted in other jurisdictions. See, for example, Maryland-National Capital Park & Planning Commission v. Montgomery County, 296 A. 2d 692 (Md. 1972) which cites Bolen as well as similar definitions from Arkansas, New Jersey, Connecticut and West Virginia.

The commissioners of a housing authority possess some of these attributes but not all. Article 1269k, Sec. 8, V. T. C. S. They are not elected. They have no taxing power. In Bolen, as dictum, the court cited Lloyd v. Twin Falls Housing Authority, 113 P. 2d 1102 (Idaho 1941) for the holding that a housing authority was not a political subdivision. Other similar holdings may be found, for example, in Mount Vernon Housing Authority v. American Motorists Ins. Co., 250 N. Y. S. 2d 479 (App. Div. 1964); Stegall v. Southwest Georgia Regional Housing Authority, 30 S. E. 2d 196 (Ga. 1944).

In Attorney General Opinion H-291 (1974) we were asked whether community centers for mental health and mental retardation were subject to Article 8309h, V. T. C. S. and concluded that, but for the existence of Article 5547-203, Sec. 3. 08, V. T. C. S., community centers would not be political subdivisions within the scope of Article 8309h. We cited authorities to the effect that they are are merely component parts of

government agencies of the state though not state agencies.

Article 5547-203, Sec. 3.08, V. T. C. S., was amended in 1973 specifically to authorize MH-MR community centers to subscribe to workmen's compensation. We have no similar law pertaining to housing authorities and, in fact, housing authorities organized under Sec. 8 of Article 1269k, V. T. C. S., have been characterized as a division of the city by which they were organized. Miers v. Housing Authority of City of Dallas, 266 S. W. 2d 487 (Tex. Civ. App., Dallas, 1954), certified questions answered, 266 S. W. 2d 842 (Tex. 1954); Aetna Casualty and Surety Co. v. Glidden Company, 283 S. W. 2d 440 (Tex. Civ. App., Eastland, 1955), reversed and appeal dismissed on other grounds, 291 S. W. 2d 315 (Tex. 1956).

We therefore answer Mr. McDonald's first question that, in our opinion, a public housing authority is not a political subdivision within Article 8309h, V. T. C. S. His second question, based on a negative answer to the first, asks whether a housing authority is subject to Article 8309h as a component of the city or county government.

Like any other division, a housing authority when operated by a department or commission of a city or county, may participate in a city or county plan developed to meet the requirements of Article 8309h, V. T. C. S.

The County Attorney of Liberty County has asked: "Is Article 8309h mandatory on counties or can Liberty County become a self-insurer?" The question is confusing because one method of complying with the requirements of the Act is to become a self-insurer under Sec. 2 (a). We will treat the question as asking whether or not it is mandatory that a county become a self-insurer, obtain a policy of workmen's compensation insurance or enter into an interlocal agreement to provide self-insurance, all as provided by Sec. 2(a) of the Act.

Section 4 of Article 8306, V. T. C. S., incorporated into Article 8309h by its § 3, reserves to employees whose employers are not "subscribers" the right to sue their employers for their injuries. Section 1 of Article

8306 is also incorporated and provides that in such a suit the employee must prove his employer's negligence but it removes common law defenses of the employer.

We therefore answer that neither Liberty County nor any other subdivision is required to be a self-insurer, to provide workmen's compensation insurance coverage, or to join with other subdivisions in providing a self-insurance plan, but any subdivision that does not do one of these subjects itself to common law liability without common law defenses and loses the benefits of Secs. 3 and 3a of Article 8306 also incorporated into Article 8309h.

Mr. Boykin, Chairman of the Industrial Accident Board, has asked five questions, the first of which is: "Will the political subdivisions set forth in (b) Sec. 2 of Article 8309(h) retain their common law defenses until the effective dates set forth therein?"

Article 8309h, Sec. 2(b) provides:

> (b) Subsection (a) of this section and Sections 1 and 4, Article 8306, Revised Civil Statutes of Texas, 1925, as amended or as may hereafter be amended, shall not apply to political subdivisions having an annual budget within the amounts indicated below, until the effective date shown for such budget bracket:

| Budget Bracket | Effective Date |
|---|---|
| $0 to $250,000 | June 30, 1977 |
| $250,001 to $500,000 | June 30, 1976 |
| $500,001 to $750,000 | June 30, 1975 |

Senate Bill 283 of the 63rd Legislature (Acts 1973, ch. 88, p. 187) which amended and added to the workmen's compensation laws, provides in its Sec. 21 that Article 8309h does not take effect until July 1, 1974. Section 2 (b), supra, further delays the effective dates of the Act as it

applies to certain political subdivisions, It also provides that the application of Sections 1 and 4 of Article 8306 to subdivisions is on the same delayed schedule. These are the sections which would deprive a political subdivision of its common law defenses.

Therefore we answer that a subdivision affected by the schedule of Sec. 2(b) of Article 8309h will not lose its common law defenses under Secs. 1 and 4 of Article 8306 until Sec. 2(a) of Article 8309h and Secs. 1 and 4 of Article 8306 become effective as to it.

Employers who are not subject to a workmen's compensation act retain their common law defenses. Le Beau v. Highway Insurance Underwriters, 187 S. W. 2d 73 (Tex. 1945).

Mr. Boykin's second question asks whether those subdivisions, as to whom the effective date of Article 8309h is delayed by Sec. 2 (b), may voluntarily participate in a joint fund prior to that time.

In the absence of constitutional authorization, and the enactment of legislation to carry it into effect, political subdivisions of the state are not eligible to become subscribers under any workmen's compensation plan. McCaleb v. Continental Casualty Co., 116 S. W. 2d 679 (Tex. 1938); Attorney General Opinion O-5315 (1943).

Accordingly, in 1948, Sec. 60 of Article 3 was added to the Constitution authorizing counties to be brought under workmen's compensation coverage. Section 61 was added in 1952 applicable to cities, towns and villages. Section 60 was amended in 1962 to be made applicable to all other political subdivisions as well as counties.

Pursuant to these authorizations, the Legislature, in 1949, enacted Article 8309c extending coverage to county employees; in 1953, enacted Article 8309e applicable to cities, towns and villages; in 1967, enacted 8309c-1 applicable to drainage districts; in 1967 amended 8309c-1 and made it applicable to independent school districts; in 1969 enacted 8309e-2,

applicable to municipal employees, repealing Article 8309e.

Senate Bill 283, supra, in its Sec. 18 repeals, as of July 1, 1974, Articles 8309c, 8309c-1, 8309e-1 and 8309e-2.

In our opinion, therefore, as to a political subdivision of the State whose inclusion under Article 8309h is delayed by Sec. 2(b) of that Act, there is no statute authorizing it to participate in a joint fund prior to the delayed effective date of Sec. 2(a) of Article 8309h, V. T. C. S.

Mr. Boykin's third question asks whether volunteer firefighters will be eligible for compensation benefits under Article 8309h.

Section 2(a) of Article 8309h, V. T. C. S., calls for plans "extending workmen's compensation benefits to their employees." Article 8309h contains two definitions of "employee", that appearing in Sec. 1 (2) and that found in Sec. 1 of Article 8309, incorporated into Article 8309h. Assuming a volunteer fireman to be one who has no contract of employment and who has not been paid, we are of the opinion that a volunteer firefighter is not eligible to receive compensation benefits under Article 8309h.

Mr. Boykin's fourth question is:

> Will the benefits provided under Article 1269m, V. T. C. S, be offset, or can they be offset, on the compensation bene-fits provided under 8309(h), and, if so, would Article 8306, Sec. 15(a) apply?

Article 1269m, V. T. C. S., is the Act establishing a Firemen's and Policemen's Civil Service. Section 26 provides for sick leave with pay, payable because of inability to work due to illness, including illness incurred while in performance of his duties. And see also Sec. 26(b) appli-cable to cities of 1, 200, 000 or more population.

While we assume that the "illness" for which sick leave is payable under Article 1269m would include the results of injuries, it is apparent

that Article 8309h does not provide compensation for ordinary illnesses and is limited to inability to work resulting from on the job injuries (Sec. 3b, Article 8306, V. T. C. S.) and certain occupational diseases (Secs. 20 and 22, Article 8306, V. T. C. S.).

Section 3 of Article 8306, incorporated into Article 8309h, provides in part:

> . . . All compensation allowed under the succeeding sections herein shall be exempt from garnishment, attachment, judgment and all other suits or claims, and no such right of action and no such compensation and no part thereof or of either shall be assignable, except as otherwise herein provided, and any attempt to assign the same shall be void . . .

Where the same illness or injury is concerned, we find nothing in either Article 1269m or Article 8309h providing that benefits under one should be set off against benefits under the other. See Dean v. Safety Casualty Co., 190 S. W. 2d 750 (Tex. Civ. App. Ft. Worth, 1945, err. dis'm., w. o. m.). While it may not have been the intention of the Legislature to allow such a recovery, we can find no basis upon which we can deny it.

Mr. Boykin's last question asks whether the political subdivisions may operate a joint fund created as a non-profit corporation? He has cited to us Article 1396-2.01 (B)(4), Non-Profit Corporation Act of Texas.

Section 2 (a) of Article 8309h, which we have quoted earlier, contemplates that the coverage to be furnished to employees of political subdivisions shall be furnished by the unit of government itelf as a self-insurer, by an insurance company under a policy of workmen's compensation insurance, or by political subdivisions entering "into interlocal agreements with other political subdivisions providing for self-insurance."

We believe that by reference to a policy of workmen's compensation insurance, it is intended to refer to a policy of insurance issued by an

insurance company licensed to issue such a policy in the State of Texas and subject to regulation by the Board of Insurance. See Insurance Code of Texas, Chapter 5, Subchapter D, Workmen's Compensation Insurance.

The type of joint action contemplated by Sec. 2(a) is, we believe, indicated by Sec. 4:

> A joint fund, as herein provided for, may be established by the concurrence of any two or more political subdivisions. The fund may be operated under the rules, regulations, and bylaws as estatablished by the political subdivisions which desire to participate therein. Each political subdivision shall be and is hereby empowered to pay into said fund its proportionate part as due and to contract for the fund, by and through its directors, to make the payments due hereunder to the employees of the contracting political subdivision.

And see Article 4413 (32c), The Interlocal Cooperation Act.

We do not believe the Legislature contemplated that the political sub-divisions form their own workmen's compensation insurance companies, and especially did not intend tha the Act's requirements be met by creation of a non-profit corporation. The Non-Profit Corporation Act, in its Article 1396-2.01, stating the purposes for which such a corporation may be organized specifically excludes, in Subparagraph B(4), authority to organize a corporation under the Act when one of its purposes is to operate and insurance company under the laws of Texas.

In our opinion, therefore, Mr. Boykin's fifth question should be answered in the negative.

This brings us to the ten questions asked by the Commissioner of Insurance, who first asks:

May a casualty insurance company provide a valid contract to indemnify or insure a political subdivision for part or all of the cost of actual benefits paid to its employees under a 'self-insurance' program without such casualty insurance company contracting to directly provide workmen's compensation benefits to such employees in view of the provisions of Section 12h of Article 8306 of the Revised Civil Statutes?

Section 12h of Article 8306, incorporated into Article 8309h by its Sec. 3(a)(1) provides:

Every contract or agreement of an employer, the purpose of which is to indemnify him from loss or damage on account of the injury of an employee by accidental means or on account of the negligence of such employer or his officer, agent or servant, shall be absolutely void unless it also covers liability for the payment of the compensation provided for by this law. This section shall not apply to employers of labor who are not eligible under the terms hereof to become subscribers thereto, nor to employers whose employees have elected to reject the provisions of this law, nor to employers eligible to come under the terms of this law who do not elect to do so, but who choose to carry insurance upon their employees independently of this law and without attempting in such insurance to provide compensation under the terms of this law. Any evasion of this section whereby an insurance company shall undertake, under the guise of writing insurance against the risk of the employers who do not see proper to come under this law, to write insurance substantially or in any material respect similar to the insurance provided for by this law shall render such insurance void as provided for in this section.

p. 1569

However, Sec. 3 (a)(1) incorporates the provisions of Sec. 12h of Article 8306 "except to the extent that they are inconsistent with this article [Article 8309h]." We believe the effect of Sec. 12h must depend upon the context in which it is read.

The original workmen's compensation law (Article 8306-8309) gave an employer an option only to be a subscriber or not. There was no provision for him to be a self insurer. Thus, Sec. 12h was designed to prevent circumvention of the law by having an employer ostensibly elect not to be covered and, at the same time, be protected by a policy of indemnity insurance.

Section 12h, as incorporated into Article 8309h, still serves to prevent that type of circumvention of the law. The covered political subdivision that elects not to provide workmen's compensation coverage may not protect itself with indemnity insurance. However, unlike the earlier law, Article 8309h offers the political subdivision the option to become self-insured. It does not circumvent the purposes of the law to permit a self-insurer to reinsure the risk.

This same problem was before the Massachusetts Supreme Judicial Court in Friend Brothers, Inc, v. Seabord Surety Co., 56 N.E. 2d 6 (Mass. 1944). Massachusetts' workmen's compensation laws contained a Sec. 54A, similar to our Sec. 12h. After its adoption, however, the Massachusetts act was amended to permit an employer to be a self-insurer. An earlier decision had held that the purpose of Sec. 54A was to compel insurers to insure under the Act. Referring to that decision the Court said:

> . . . We do not believe that this statute, which,
> as pointed out in Alecks' Case, supra, was for
> the purpose of compelling employers to insure
> under the act, was intended, after they had
> insured their employees by becoming self-
> insurers, to make it difficult for them to do
> so by denying them the right to reinsure. Such

a construction would impute to the Legislature
an intent to discourage self-insurance and to
weaken the financial strength of the self-insurer
who seeks by reinsurance to increase it for the
benefit of himself and his employees. Where
a statute such as St. 1943, c. 529, makes it
compulsory for one to insure his employees and
gives him the choice of either insuring with an
insurer or acting as a self-insurer, it would
take clear and unequivocal language to convince
us that one of these methods was to be regarded
with less favor than the other. Such language
is not be found either in c. 529 or in section 54A.

We therefore answer the Commissioner's first question that a self-insurer under Article 8309h may reinsure part or all of benefits paid.

The Commissioner's second question asks:

Do the provisions of Subsection (a) of Section 2
of Article 8309h of the Revised Civil Statutes pro-
vide elections as to three separate courses of
action for a political subdivision or may a political
subdivision provide workmen's compensation benefits
by a combination of the three methods?

We are unable to answer this question with reference to all the possible combinations of self-insuring, purchasing policies of insurance, and joining with other subdivisions in plans of self insurance.

Subsection 2 (a) of Article 8309h speaks in the alternative: "All political subdivisions of this state shall become either self-insurers, provide insurance . . . , or enter into interlocal agreements . . . . " (Emphasis added). Read literally, no unit could satisfy its obligation by more than one method. However, we have already said there could be reinsurance and there may be other valid devices by which more than one method would be involved.

In this connection, we believe it apparent that the Legislature intended to encourage political subdivisions to provide coverage by making alternative means available. We would be reluctant to adopt an interpretation that would discourage such action.

The Commissioner's third question is:

> May self-insurers under the provisions of Section 4 of Article 8309h create by contract a sharing of risk of liability for the actual cost of benefits paid to employees or is the function of such contracts or 'fund' limited to the securing or providing of services in the administration necessary to run such a program?

We have quoted Sec. 4 of Article 8309h above in connection with Mr. Boykin's last question. We think the last phrase of the section answers the question. Subdivisions may pay into the fund "to make the payments due hereunder to the employees of the contracting political subdivision." (Emphasis added).

Expenses of providing service in administering the program are not paid to the employees. Therefore, it is apparent that the section contemplates not only the payment of those expenses but also employee benefits from the fund created under Sec. 4 of Article 8309h.

The Commissioner's fourth question is:

> Do the terms 'joint fund' or 'interlocal agreements' used in Article 8309h of the Revised Civil Statutes permit contracts with a separate entity that is not itself a political subdivision wherein such separate entity bears the risk of the actual cost of workmen's compensation benefits paid to employees or where such entity for a substantial period of time defers the full actual cost of such benefits to a particular political subdivision?

Section 4 of Article 8309h, supra, and Sec. 2(a), supra, which incorporates Article 4413 (32c), V.T.C.S., the Interlocal Cooperation Act, clearly indicate an intention on the part of the Legislature to extend broad discretion to political subdivisions in creating the vehicles by which they will provide workmen's compensation coverage as self-insurers, including the creation of some forms of separate entities.

The fifth question asked by the Commissioner is:

> May a 'self-insurer' under Article 8309h contract with a casualty insurance company to provide administrative services in the performance of such a plan where such insurer does not bear the cost of the actual benefits paid to employees?

> If the answer to the foregoing is affirmative:
> Do the usual prohibitions against a political subdivision dealing in insurance with a mutual insurer apply to such a contract?

Unless such a contract were used in some way to subvert the purposes of Article 8309h, we see no more reason to deny a self-insurer under Article 8309h the right to contract with a third person (including an insurance company) to provide administrative services than to deny it the right to reinsure its risks. Article 3, Sec. 52 of the Texas Constitution prohibits a political subdivision from becoming a stockholder in a corporation. This has been held to prohibit political subdivisions from becoming assureds of mutual companies because, by doing so, they purchase rights and obligations of ownership. City of Tyler v. Texas Employers' Insurance Association, 288 S.W. 409 (Tex. Comm. App. 1926), motion for rehearing overruled, 294 S.W. 195 (Tex. Comm. App. 1927) and Lewis v. Independent School District of City of Austin, 161 S.W. 2d 450 (Tex. 1942); and see Attorney General Opinions O-924 (1939); WW-986 (1961); M-62 (1967); M-582 (1970).

A contract with a mutual company for it to provide services, without the political subdivision purchasing a policy of insurance or becoming an assured of the company certainly does not run afoul of Sec. 52 of Article 3.

The Commissioner next asks the following two questions:

6. As used in the subject legislation, what is a 'self-insurer'?

7. As used in the subject legislation, what is 'self-insurance'?

Section 60 of Article 3 of the Texas Constitution, to which we have alluded earlier, gave the Legislature power to authorize counties to purchase workmen's compensation or to be self-insurers. In Attorney General Opinion C-744 (1966) this Office construed "self-insured", as used in that context, as referring to the status of a county which had adopted the Act and chose to carry its own risk of liability as opposed to purchasing coverage of the risk from a private carrier.

"Self-insurance" is defined in Webster's Third New International Dictionary as "insurance of oneself or of one's own interest by the setting aside of money at regular intervals to provide a fund to cover possible losses." In our opinion this definition is properly applicable to Article 8309h, except that there is no need that the fund be created by periodic deposits. See also Article 6701h, V. T. C. S., Sec. 34(b), The Texas Safety Responsibility Law.

In our opinion, self-insurance, in the context of Article 6709h, is not insurance; it is the assumption by a political subdivision of liability for the payment of workmen's compensation benefits to its employees directly, and not through insurance.

The eighth question asked by the Commissioner is:

Do the provisions of Article 8309h exempt a
casualty insurance company in the purveying of a
workmen's compensation policy to a political sub-
division from any regulatory provision of the
Insurance Code to which it would otherwise be
subject?

No. There is nothing in Article 8309h which would exempt any
insurance company selling a workmen's compensation insurance policy
to a political subdivision from any regulatory laws to which such a company
would be liable if selling its policy to a private corporation.

Question number nine is:

Is the plan sponsored by the Texas Municipal
League (see material attached) a 'self-insurance'
plan authorized under Article 8309h? What agree-
ments, functions and activities contemplated in
the plan are subject to regulation under the Insurance
Code, if any?

We have been furnished with copies of the Bylaws of the Texas Municipal
League's Workmen's Compensation Joint Insurance Fund and of a suggested
form of contract for employer members of that fund. Likewise we have been
furnished with an "Interlocal Agreement" to be a contract between a political
subdivision and the Texas Association of School Boards Workmen's Compensa-
tion Self Insurance Fund .

Article 8309h imposes few restrictions upon the self-insurance
interlocal agreements authorized by Sec. 2(a). Such restrictions as there are
are found in Sec. 4, supra. A joint fund must consist of two or more political
subdivisions. Each is authorized to pay into the fund only its proportionate
part as due.

We believe the drafters of Sec. 4 contemplated a rather simple entity

by which political subdivisions might reduce administrative and claim expenses by joint action. The two plans we have examined very nearly approach some form of mutual insurance. Each calls for the payment of premiums based on predicted, not actual, experience with the investment of unused funds, with profit to be returned to members as a reduction in premiums at some future time. We are not prepared to say that anything about either plan violates any provision of Article 8309h, V. T. C. S., but we do believe that they are subject to the inhibitions of Sec. 52 of Article 3 of the Texas Constitution, articulated in the cases of City of Tyler v. Texas Employers Insurance Association and Lewis v. Independent School District of Austin, supra, and the opinions cited with them, supra. Were such a plan valid, we feel that the fund, not the individual self-insurer, would be subject to regulation as provided in the Insurance Code in all aspects of its business, from its creation to its dissolution.

The tenth and last question asked by the Commissioner is:

> Does the plan, agreement and contract filed with the State Board of Insurance by Aetna Insurance Company for cities, counties, school districts and other political subdivisions, whereby Aetna Insurance Company will administer a 'self-insured fund' of workmen's compensation benefits for the employees of such a political subdivision, and whereby Aetna is reimbursed for claims paid on behalf of such political subdivision not to exceed 60% of the annual standard premium payable for insurance on such employees, and whereby such plan is coupled with workmen's compensation and employer's liability insurance policy covering limits in excess of $50,000 per occurrence and annual aggregate stop loss insurance in excess of the 60% of the standard annual premium, but with a $5,000,000 aggregate stop loss, constitute such political subdivision as a lawful and authorized 'self-insurer' under Section 2 of Article 8309h, Revised Civil Statutes of Texas, as amended and enacted by the 63rd Legislature? If so, is all or any portion of such

'self-insured' plan, agreement or contract subject to the
regulatory authority of the State Board of Insurance, and,
if so, the extent and authority of the State Board of Insurance
over such 'self-insured' plan, agreement and contract? A
summary of the Aetna Insurance Company plan and a copy
of its contractual agreement are attached hereto.

Under the proposed plan of Aetna, the self-insuring political subdivisions
would create a fund, separate and apart from Aetna. Aetna would adjust
claims and would be reimbursed by the fund for claims paid. In addition,
Aetna would receive a fee for the stop-loss insurance provided by it, out of
which it would pay administrative expenses.

Our answers to the first and fifth questions of the Commissioner would
indicate our answer to the tenth question. We see no reason why a self-
insurer, whether it be an individual or a fund, could not re-insure or, as in this
case, provide stop loss insurance to minimize its loss. Nor can we perceive
any valid objection to a contract between a self-insurer and a third party to
handle the adjustment and payment of claims. Aetna is an insurance company
regulated by the State Board of Insurance. The policy of stop-loss insurance
which it proposes to issue here would be subject to the same general regu-
lation of the Board that other policies, not subject to specific regulations,
are subjected.

## SUMMARY

Article 8309h, V. T. C. S. is constitutional and applies
to political subdivisions, including housing authorities.
Political subdivisions may, if they choose, elect not to
be subscribers, in which case they are subject to common
law liability and lose their common law defenses. Pending
inclusion under the Act, political subdivisions are not
authorized to purchase workmen's compensation insurance.
Volunteer firefighters are not covered. Benefits under

the Act are not subject to being set off against benefits paid under Article 1269m, V. T. C. S.

Funds created under the Act may not be operated as non-profit corporations. There are numerous ways in which self-insurers under the Act may operate.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee